UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WP6 RESTAURANT MANAGEMENT GROUP LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>  Defendant. | Case No. 2:20-CV-1506-KJD-NJK<br><br>ORDER |

Presently before the Court is Defendant's Motion to Dismiss (#42/43). Plaintiff filed a response in opposition (#47) to which Defendant replied (#48/49).

I. Background

Plaintiff WP6 Restaurant Management Group, LLC ("WP6") owns and operates "more than a dozen fine dining restaurants, as well as premium catering services, more than 80 Wolfgang Puck Express operations, and [provides] management services to restaurant services around the world." (Amended Complaint, ECF No. 35, ¶ 9.) WP6's restaurant locations are located in California, Nevada, Florida, Hawaii and New York. (Id., ¶ 10.) According to its complaint, WP6 also "earns income through royalty, licensing fee and commission agreements with various restaurants and establishments located throughout the United States and the world (collectively referred to as 'Dependent Time-Element Locations')." (Id., ¶ 11.)

Defendant Zurich American Insurance Company ("Zurich") issued Edge Policy No. ERP 0082839-05 to WP6, effective January 1, 2020 to January 1, 2021 ("Policy"). (Ex. "A" to Amended Complaint). The Insuring Agreement of the Policy states that:

> This Policy Insures against direct physical loss of or damage

caused by a **Covered Cause of Loss**[1] to Covered Property, at an Insured Location . . . all subject to terms, conditions and exclusions stated in this Policy.

(Policy, §1.01; Amended Complaint, ¶ 105.)

According to its amended complaint, WP6 contends that it should be provided coverage under the Policy pursuant to Sections 4.01.01 ("Loss Insured"), 5.02.03 ("Civil or Military Authority"), and 5.02.05 ("Contingent Time Element") of the Policy. Those provisions provide as follows:

> 4.01 LOSS INSURED
>
>> 4.01.01
>>
>> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**.
>
> * * * * * * *
>
> 5.02.03. CIVIL OR MILITARY AUTHORITY
>
>> The Company will pay for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.
>
> * * * * * * *

---

[1] The Policy uses bold type for defined terms. Covered Cause of Loss is defined as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." (Policy, §7.11; Amended Complaint, ¶ 105.)

- 2 -

5.02.05. CONTINGENT TIME ELEMENT

> The Policy covers the actual Time Element Loss as provided by the Policy, sustained by the Insured during the Period of Liability directly resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** results from direct physical loss of or damage caused by a **Covered Cause of Loss** to property (of the type insurable under this Policy) at **Direct Dependent Time Element Locations, Indirect Dependent Time Element Locations** and **Attraction Properties** .

The Policy also contains exclusions. The Policy expressly excludes coverage for loss arising from the "loss of use" of property. (Policy, §3.03.02.01 ["This Policy excludes: Loss or damage arising from delay, loss of market, or loss of use."].)

II. Standard for a Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss should be granted where a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("Twombly"), or where plaintiff fails to plead a "cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Iqbal") (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

While considering Rule 12(b)(6) motions, courts must accept factual allegations as true, but "a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences." Packaging Sys. v. PRC-Desoto Int'l, Inc., 268 F. Supp. 3d 1071, 1079 (C.D. Cal. 2017) (citing Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). "A complaint that does not permit the court to infer more than the mere possibility of misconduct has 'alleged – but not shown – that the pleader is entitled to relief,' and it must be dismissed." Nelson v. XL Am., Inc., No. 2:16-cv-00060-JAD-GWF, 2017 U.S. Dist. LEXIS 154103, at *5 (D. Nev. Sep. 21, 2017) (granting defendant insurer's motion to dismiss on basis of insurance

1  policy's exclusion) (quoting Twombly, 550 U.S. at 570).

2  III. Analysis

3  Under Nevada law, "[t]he starting point for the interpretation of any contract, including insurance policies, is with its plain language." Hunt v. AAA Nev. Ins. Co., 369 F. Supp. 3d 1113, 1117 (D. Nev. 2019) (citing McDaniel v. Sierra Health and Life Ins. Co., Inc., 53 P.3d 904, 906 (Nev. 2002). "If an insurance policy is unambiguous, the Nevada Supreme Court interprets it according to the plain meaning of its terms." Cohen v. Berkley Nat'l Ins. Co., No. 2:17-cv-00057- GMN-GWF, 2017 U.S. Dist. LEXIS 144633, at *6 (D. Nev. Sep. 6, 2017) (granting defendant insurer's motion to dismiss based upon an exclusion in the policy at issue) (quoting Powell v. Liberty Mut. Fire Ins. Co., 252 P.3d 668, 672 (Nev. 2011)). "A provision in an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation." Benchmark Ins. Co. v. Sparks, 254 P.3d 617, 621 (Nev. 2011). But, "just because language could be more precise does not mean it is ambiguous[,]" City of Carlsbad v. Ins. Co. of the State of Penn., 180 Cal. App. 4th 176, 182 (Cal. Ct. App. 2009), and "an abstract ambiguity based on a semantically permissible interpretation of a word or phrase cannot create coverage where none would otherwise exist." State Farm Gen. Ins. Co. v. JT's Frames, Inc., 181 Cal. App. 4th 429, 444 (Cal. Ct. App. 2010).

Ultimately, as explained by the Nevada Supreme Court, an insurance policy is "given its plain and ordinary meaning from the viewpoint of one not trained in law, meaning, [courts] will not rewrite contract provisions that are otherwise unambiguous … [or] increase an obligation to the insured where such was intentionally and unambiguously limited by the parties." United Nat'l Ins. Co. v. Frontier Ins. Co., 99 P.3d 1153, 1156 (Nev. 2004); Farmers Ins. Exch. v. Neal, 64 P.3d 472 (Nev. 2003); Famers Ins. Group v. Stonik, 867 P.2d 389, 391 (Nev. 1994) ("this court will not rewrite contract provisions that are otherwise unambiguous."). WP6 does not allege that any of the Policy's terms at issue in this motion are ambiguous, and this Court has not previously held that such terms are ambiguous. Circus Circus LV, LP v. AIG Specialty Insurance Company, 525 F.Supp.3d 1269, 1274-75 (D. Nev. 2021); Levy Ad Group v. Chubb Corp., 519 F.3d 832, 836-37 (D. Nev. 2021) (granting motion to dismiss because plaintiffs failed to allege

physical loss or damage to their premises and "instead merely assert that they were 'ordered to close' and 'were not permitted to conduct business operations'") (aff'd mem., 2022 WL 816927 *1, No. 21-15413 (9th Cir. March 17, 2022)).

### A. Failure to state a claim for a Covered Cause of Loss

WP6 has failed to meet its burden of demonstrating that its claim is covered under the Policy. Nat'l Auto. & Cas. Ins. Co. v. Havas, 339 P.2d 767, 768 (Nev. 1959) (under Nevada law, the insured bears the burden of proof initially and must demonstrate that the claim is "within the terms of the policy."). Under the Policy's insuring agreement for property coverage, WP6 must plead with supporting factual allegations and ultimately prove the existence of "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location." (Policy, § 1.01). Similarly, the Policy's Contingent Time Element coverage requires "direct physical loss of or damage to" property (id., §5.02.05) and its Civil or Military Authority coverage requires that any "order of a civil or military authority that prohibits access" to insured property must be in response to "a direct physical loss of or damage caused by a Covered Cause of loss" to third party property (id., §5.02.03).

### 1. The Policy Requires Physical Alteration to Insured Property

"Direct physical loss of or damage" to property requires "a physical change in the condition or a permanent dispossession of the property." Circus Circus, 525 F.Supp.3d at 1276 (citing Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd., No. 20-cv-03674, 2021 WL 428653, *4 (N.D. Cal. Feb. 8, 2021)). As explained in Circus Circus, while the Nevada Supreme Court has not yet explicitly interpreted the term "direct physical loss or damage," "the Nevada Supreme Court has generally cabined claims for coverage under similar policies to plaintiffs who allege **some sort of structural or physical change** to a property, **which actually altered its functionality or use**." Id. (emphasis added) (citing Fed. Ins. Co. v. Coast Converters, 339 P.3d 1281, 1283 (Nev. 2014) (describing "electrical problems at a plastic bag manufacturing plant [that] led to **damaged machinery** and an increased number of defective bags being produced."); Farmers Home Mut. Ins. Co. v. Fiscus, 725 P.2d 234, 236 (Nev. 1986) (upholding coverage determination under a "physical loss" provision for **damages to a home caused by flooding**

1  "from disconnected water supply pipes") (emphasis added); see also, Levy Ad Group, 519 F.3d
2  at 836-37 (granting motion to dismiss because plaintiffs failed to allege physical loss or damage
3  to their premises and "instead merely assert that they were 'ordered to close' and 'were not
4  permitted to conduct business operations.'") (aff'd mem., 2022 WL 816927 *1, No. 21-15413
5  (9th Cir. March 17, 2022)).

6  When Nevada law is silent on an issue, Nevada courts will often look to
7  California law as persuasive authority. As explained by one Nevada federal court, "[i]n the
8  context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to
9  persuasive precedent from other jurisdictions, especially California." Zurich Am. Ins. Co. v.
10 Coeur Rochester, Inc., 720 F. Supp. 2d 1223, 1235 (D. Nev. 2010); see, e.g., Jackson v. State
11 Farm Fire & Cas. Co., 108 Nev. 504, 509 (1992) (relying on California law and adopting the
12 "manifestation rule" or trigger for first party property policies). As Judge Dorsey explained in
13 Circus Circus, California courts "often guide" Nevada courts. Circus Circus, 525 F.Supp.3d at
14 1275. And California courts "have consistently interpreted 'direct physical loss' to require a
15 'distinct, demonstrable, physical alteration of the property' or a 'physical change in the condition
16 of the property.'" Id. (citing MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,
17 187 Cal. App. 4th 766, 771 (2010)).

18 The overwhelming weight of authority holds that "direct physical loss of or
19 damage" requires a "distinct, demonstrable, physical alteration of the property[.]" "[P]ure,
20 economic losses caused by COVID-19 closures do not trigger policy coverage predicated on
21 'direct physical loss or damage.'" Circus Circus, 525 F.Supp.3d at 1276; id., at fn. 33 (citing
22 Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co., No. 20-cv-5898, 2020 WL 7889061, at
23 *2 (N.D. Fla. Dec. 18, 2020); Carrot Love, LLC v. Aspen Specialty Ins. Co., No. 20-23586-Civ,
24 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (noting the "nearly unanimous view that
25 COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger
26 coverage under the policy at issue here") (collecting cases); Johnson v. Hartford Fin. Servs. Grp.,
27 Inc., No. 1:20-cv-02000, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021) ("Plaintiffs do not allege
28 any tangible alteration to a single physical edifice or piece of equipment [that] the COVID-19

virus caused"); 10E, LLC v. Travelers Indem. Co. of Conn., No. 2:20-cv-04418, 2020 WL 6749361, at *2 (C.D. Cal. Nov. 13, 2020); Levy Ad Group, 519 F.3d at 836-37 (granting motion to dismiss because plaintiffs failed to allege physical loss or damage to their premises and "instead merely assert that they were 'ordered to close' and 'were not permitted to conduct business operations'") (aff'd mem., 2022 WL 816927 *1, No. 21-15413 (9th Cir. March 17, 2022)).

The Ninth Circuit, interpreting California law, found that the phrase "direct physical loss of or damage to" property requires physical alteration of the property. See Mudpie, Inc. v. Travelers Cas. Ins. Co., 15 F.4th 885, 892 (9th Cir. 2021). At least six other Circuit Courts of Appeal agree with the Ninth Circuit: Estes v. Cincinnati Ins. Co., 23 F.4th 695 (6th Cir. 2022); Terry Black's Barbeque, L.L.C. v. State Auto. Mut. Ins. Co., 22 F.4th 450 (5th Cir. 2022); 10012 Holdings, Inc. v. Sentinel Ins. Co., 21 F.4th 216 (2d Cir. 2021); Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327 (7th Cir. 2021); Goodwill Inds. of Central Oklahoma, Inc. v. Philadelphia Indem. Ins. Co., 21 F.4th 704 (10th Cir. 2021); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141, 1143–45 (8th Cir. 2021).

WP6's amended complaint, which asserts physical loss and damage, simply does not meet the "plausibility" requirement of Twombly. See, e.g., MRI Healthcare, 187 Cal. App. 4th at 780 ("For there to be a 'loss' within the meaning of the policy, some external force must have acted upon the insured property to cause a physical change in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term"). WP6's amended complaint contains conclusory allegations that "the presence of COVID19 particles: renders items of physical property unsafe and premises unsafe[,]" but fails to allege any physical alteration to insured property. (See Amended Complaint ¶¶ 22, 30-32.) At best, WP6's amended complaint contains allegations that COVID-19 "remain[s] viable" for "hours to days on surfaces," but WP6 fails to (and cannot) allege that COVID-19 causes tangible, physical alteration of any property. (See Amended Complaint, ¶ 21.) WP6's amended complaint fails to state a claim for coverage under the Policy because WP6 failed to (and cannot) allege that COVID19 causes tangible physical alteration of any property, let alone insured property. WP6

cannot demonstrate that any insured properties suffered "direct physical loss of or damage caused by a Covered Cause of Loss[.]"

### B. Civil or Military Authority Provision

WP6 alleges that "[t]he physical loss of or damage to Wolfgang Puck's restaurants [is] due to COVID-19 as well as the [Stay-at-Home] Orders" issued by the Governors of California, Nevada, Hawaii, New York, Florida, New Jersey, and governments of Singapore, the United Kingdom, Turkey, and Bahrain. WP6 alleges that the Stay-at-Home Orders caused "physical loss of or damage to" WP6's insured locations.

The Policy's Civil or Military Authority provision provides coverage for losses "resulting from the necessary Suspension of the Insured's business activities" if a governmental order prohibits access to an insured Location, but "[t]hat order must result from a civil authority's response to a direct physical loss of or damage caused by a Covered Cause of Loss" to third party property. Judge Dorsey, in this district, recently found that a nearly identical provision did not provide coverage for economic losses arising from Governor Sisolak's emergency orders restricting business operations. See Levy Ad Group, 519 F.Supp.3d 832, 837 (D. Nev. 2021) (aff'd aff'd mem., 2022 WL 816927 *1, No. 21-15413 (9th Cir. March 17, 2022)). Here, Plaintiff's allegations do not and cannot state a claim because the closure orders from varied locations are not ordering the businesses closed due to physical damage.

The order closest to fulfilling the policy terms was from the Governor of New York which stated that the order was given partially because "the virus physically is causing property loss and damage." Even if that statement was factual rather than conclusory, it still does not satisfy the terms of the policy. The policy states that the order:

> [M]ust result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations.

The Governor's order did not result form damage to another property, but presumed that **every** commercial property, including WP6s, was damaged.

The Court has no doubt that the Nevada Supreme Court would come to the same

conclusion as the Ninth Circuit Court of Appeals, the District of Nevada and California District Courts. See, e.g., 10E, LLC, 483 F.Supp.3d at 837 (interpreting a similar coverage provision and denying coverage because the plaintiffs did not "allege actual cases" of direct damage "at other locations" caused by the COVID-19 pandemic); W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos., 498 F.Supp.3d 1233, 1239–40 (C.D. Cal. 2020) (applying California law) (reasoning that the plaintiff failed to state a claim for improper denial of coverage due to COVID-19 closures, when coverage was premised on a "civil authority" "that prohibits access to the area immediately surrounding the damaged property, including the insured's premises"); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 487 F.Supp.3d 937, 944–45 (S.D. Cal. 2020) ("[T]o survive dismissal, the complaint must, at a minimum, allege that the government (1) prohibited [p]laintiffs from accessing their premises (2) due to direct physical loss of or damage to property elsewhere"); Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., 488 F.Supp.3d 904, 908–909 (N.D. Cal. 2020) (dismissing a complaint, in part, because of a dearth of allegations showing that California's COVID-19 orders were issued due to physical property damage or loss at premises located near the plaintiff's).

Accordingly, Plaintiff has not stated a claim for coverage under the Civil or Military Authority Provision.

### C. Business Suspension Due to Direct Physical Loss or Damage to Property

For a claim for business interruption losses under the Time Element Coverage, WP6 must demonstrate the existence of "direct physical loss of or damage to" insured property, and demonstrate that the suspension of business is due to "direct physical loss of or damage" to insured property. (Policy, § 4.01.01.) The Court has already found that WP6 has failed to plead any plausible physical loss or damage. Additionally, the Court finds that WP6 has failed to plead that its business activities were suspended because of any physical loss or damage.

The requirement that WP6 plead and, ultimately, prove that its losses resulted from "direct physical loss of or damage" to property is critical to finding coverage under the Policy. For instance, the business interruption coverage only applies for the Period of Liability, which is defined as "[t]he period starting from the time of physical loss or damage … and ending when

with due diligence and dispatch [the insured property] could be repaired and replaced." (Policy § 4.03.01.01.) Here, there could be no effective "Period of Liability," and therefore no coverage, because there is no allegation that any property needed to be repaired or replaced because of physical loss or damage. See Mudpie, 487 F. Supp. 3d at 840 ("But here, there is nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property") (aff'd 15 F.4th 885 (9th Cir. 2021)).

WP6's amended complaint demonstrates that any closure of its properties, including restaurants and dining rooms was not due to any "physical loss of or damage" to insured property, but instead was the result of prophylactic community-wide "Stay at Home" Orders, which were issued to curb further person-to-person transmission of the virus that causes COVID-19. (See Amended Complaint ¶¶ 28-33.) Because Plaintiff cannot allege cognizable facts regarding the necessary causal connection between a direct physical loss of or damage to property and its suspension of services (as required by the Time Element Coverage), Plaintiff has no plausible claim for business interruption losses. Accordingly, the Court finds that Plaintiff has failed to state a claim on its first two counts in the amended complaint.

### D. Loss of Use Exclusion

WP6's amended complaint makes clear that its alleged losses result from its inability to use its properties in the same manner as it did before the pandemic. (Amended Complaint, ¶ 29 [the Stay-atHome Orders "effectively limited Wolfgang Puck's restaurants' on-premises dining and operations, resulting in an interruption of necessary operations and an immediate business income loss"]). The Policy, however, expressly excludes coverage for damage arising from the "loss of use" of property. Policy, §3.03.02.01; see also Mudpie, 487 F. Supp. 3d at 842-843 (applying policy's "loss of use" exclusion to COVID-19 losses). Courts have routinely explained that "'loss of use' of property is not the same as 'loss' of property." Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 816 (Cal. App. Ct. 1994) (collecting cases). In this case, WP6 alleges only that it has lost the use of its various properties. The Policy does not provide coverage for such a claim. Accordingly, the Court dismisses Plaintiff's claims as excluded by the Policy.

### E. Count 3 and 4 – Tortious Breach of Covenant of Good Faith and Fair Dealing and Nevada Unfair Settlement Practices

Counts 3 and 4 of WP6's amended complaint seek damages based upon an alleged tortious breach of the implied covenant of good faith and fair dealing and an alleged breach of the Unfair Claims Settlement Practices Act, NRS §686A.310. Critical to both claims, however, is WP6's core allegation that Zurich alleged "refused without proper cause to compensate" WP6 for its alleged losses. Thus, both claims rely on a bad faith refusal to pay insurance proceeds under the Policy.

Primary to establishing a prima facie case of bad faith refusal to pay an insurance claim is proof that the insurer was required to pay the insurance claim. Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 604 (Nev. 1998) ("To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage."); U.S. Fid. & Guar. Co. v. Peterson, 91 Nev. 617, 540 P.2d 1070, 1071 (Nev. 1975) (bad faith liability requires a showing that an insurer refused "without proper cause to compensate its insured for a loss covered by the policy"). And, while an allegation of a failure to investigate is relevant to a bad faith failure to pay an insurance claim, "the failure to investigate is not itself bad faith." Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co., 863 F. Supp. 1237, 1249 (D. Nev. 1994) (citing Hart v. Prudential Property & Casualty Ins. Co., 848 F. Supp. 900, 905 n. 4 (D. Nev. 1994)). Instead, an alleged failure to investigate is only evidence that might support a bad faith refusal to pay insurance proceeds. But again, in order for WP6 to establish a prima facie case of bad faith, WP6 must first show that Zurich had an obligation to pay under the Policy. Id.

The Court having found that Plaintiff has failed to state a claim for coverage under the insurance contract justifying declaratory relief and breach of contract, finds that Plaintiff has failed to state a claim for tortious breach of the covenant of good faith and fair dealing and violation of the Nevada Settlement Practices Act.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#42/43) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff is **DENIED leave to amend as futile**;

IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

Dated this 31st day of March, 2022.

Kent J. Dawson
United States District Judge